IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN HAMPTON,<br><br>      Plaintiff,<br>v.<br><br>UTAH TRANSIT AUTHORITY<br><br>      Defendants/Counterclaimants. | **MEMORADUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART THE UTA'S MOTION TO DISMISS**<br><br>Case No. 2:16-cv-01282-JNP-EJF<br><br>District Judge Jill N. Parrish |

Steven Hampton sued his former employer, the Utah Transit Authority (UTA), for age discrimination and other claims after he was laid off. Before the court is the UTA's motion to dismiss Mr. Hampton's action. [Docket 5]. The UTA argues that the court lacks subject matter jurisdiction to address Mr. Hampton's first age discrimination claim under the Age Discrimination in Employment Act (ADEA) because he failed to exhaust his administrative remedies before filing suit. It also argues that the court should dismiss his second age discrimination claim under 49 U.S.C. § 5332(b) and 42 U.S.C. 2000d because those statutes do not create a private right of action for age discrimination. Finally, the UTA argues that the court should dismiss the state-law breach of contract cause of action for failure to state a claim because Mr. Hampton did not allege the elements of a valid contract.

The court DENIES the motion to the extent that it requests dismissal of the ADEA age discrimination claim. The court GRANTS the motion to the extent that it requests dismissal of the age discrimination claim under 49 U.S.C. § 5332(b) and 42 U.S.C. 2000d. The court further GRANTS the motion to the extent that it requests dismissal of the breach of contract claim.

# BACKGROUND[1]

Mr. Hampton worked for the UTA as an auditor. On September 16, 2015, the UTA informed Mr. Hampton that it intended to terminate his position. In a meeting with his boss and a human resources employee, Mr. Hampton was promised that he would receive a lifetime UTA ride pass. He was also promised that his unused sick time would be converted to a Health Reimbursement Account (HRA).

The UTA forwarded a severance agreement to Mr. Hampton, but he decided not to sign it. After Mr. Hampton declined to sign the agreement, the UTA refused to give him a lifetime pass or convert his unused sick time to an HRA.

Within 180 days of being laid off, Mr. Hampton submitted an intake form to the Utah Antidiscrimination and Labor Division (UALD). The intake form asserted claims of age discrimination and requested that the agency take action. Notwithstanding the timely filing, the UALD did not create a charge or forward the matter to the U.S. Equal Employment Opportunity Commission (EEOC).

Mr. Hampton subsequently filed a lawsuit against the UTA in this court. The complaint alleges three causes of action: (1) age discrimination under the ADEA, (2) age discrimination under 49 U.S.C. 5332(b) and 42 U.S.C. 2000d et seq., and (3) breach of contract. The UTA moved to dismiss all claims under either Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

# ANALYSIS

---

[1] In this section, the court accepts the allegations of the complaint as true. In Part I.A of this memorandum decision, the court considers evidence of other jurisdictional facts related to the UTA's Rule 12(b)(1) argument.

**I.     THE ADEA CLAIM**

The UTA first argues that the court should dismiss the ADEA claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The UTA asserts that the court lacks jurisdiction because Mr. Hampton did not file a charge with the appropriate state agency within 300 days after the alleged unlawful practice occurred as required by 29 U.S.C. § 626(d)(1)(B). The UTA also contends in its reply brief that the court lacks jurisdiction because Mr. Hampton did not allege that it filed this lawsuit within 90 days after the proceedings before the EEOC were terminated. *See id.* § 626(e).

*A. Jurisdictional Facts*

A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) may take one of two forms. A party may make a facial challenge to the allegations contained in the plaintiff's complaint, or a party may mount a factual challenge by asserting that the underlying facts of the case do not support the jurisdiction of the court. *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 547 (10th Cir. 2001). "In addressing a factual attack, the court . . . 'has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Id.* (citation omitted).

The UTA mounts a factual challenge to jurisdiction. Pursuant to this factual challenge, both the UTA and Mr. Hampton have submitted documents related to the administrative proceedings below. These documents establish that Mr. Hampton was laid off on September 18, 2015. He initially accepted the severance agreement the UTA had offered him, but on October 15, 2015, he signed a letter in which he rescinded this acceptance. He later retained a law firm to handle an age discrimination claim against the UTA. On March 11, 2016, an employee of that firm emailed a completed intake form to the UALD. The form outlined the allegations of Mr.

Hampton's age discrimination claim and listed the relief that he sought. The first line of the form, which was created by the UALD, contained the following notice:

> **THIS FORM DOES NOT REPRESENT A CHARGE OF DISCRIMINATION WITH THE DIVISION.** In order to file a Charge with the Division, you must complete and return this form. The Division will use the information in this Intake Form to draft a separate Charge which will be mailed to you. You will then need to sign the Charge and have it notarized. The Division can formally open a case only after it has received your signed, notarized Charge.

Just before the signature line, the intake form also states: "In submitting this form you also understand that this does not constitute a Charge of Discrimination and that any Charge of Discrimination must be signed, notarized and filed with the Division . . . ."

The UALD apparently lost the intake form, and Mr. Hampton's law firm resubmitted it on May 2, 2016. On May 24, 2016, the UALD mailed a completed charge to Mr. Hampton. A letter accompanying the charge informed him that the charge had to be signed, notarized, and filed with the UALD within 300 days of the last allegedly discriminatory act for the federal government to take any action. Measured from the day that Mr. Hampton was laid off, this 300-day deadline was July 14, 2016. Mr. Hampton's lawyer emailed the signed and notarized charge to the UALD on August 4, 2016. The UALD stamped it as received on August 8, 2016.[2]

B. *The Timeliness of Mr. Hampton's Charge*

In states that have statutes prohibiting age discrimination, the ADEA requires a claimant to file "a charge alleging unlawful discrimination . . . within 300 days after the alleged unlawful

---

[2] The late filing may have been the result of confusion caused by the manner in which the intake form had been filled out. The intake form stated that Mr. Hampton had been laid off on September 18, 2015. But the form also stated that he had been terminated on October 15, 2016, an apparent reference to the date on which Mr. Hampton rescinded his acceptance of the severance agreement. When the UALD prepared the charge, it listed the October 15, 2016 date as the last day of his employment and the latest date on which discrimination took place. When Mr. Hampton filed the charge, he crossed out the October 15 date listed as the last date of employment and handwrote September 16. Calculated from October 15, 2015, the 300-day deadline would have been August 10, 2016.

4

practice occurred" before the claimant can commence a civil action. 29 U.S.C. § 626(d)(1). The UTA argues that the court lacks subject matter jurisdiction over this case because Mr. Hampton did not submit the verified charge until after the 300-day deadline had passed. But Mr. Hampton contends that he did not miss the deadline because the intake form that he submitted on March 11, 2016 constituted a charge. Thus the key jurisdictional questions for the ADEA cause of action are: What is required to file a charge under the ADEA? And did the intake form satisfy those requirements?

In *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), the Supreme Court defined the necessary elements of a "charge" as that term is used in the ADEA. Analyzing the statute and the EEOC regulations promulgated thereunder, the Court determined that the only requirements for an ADEA charge are: (1) a written statement (2) that names the employer, (3) generally alleges the discriminatory act or acts, and (4) is capable of being "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402; *see also* 29 C.F.R. §§ 1626.6, 1626.8(b). Unlike Title VII of the Civil Rights Act (Title VII), which requires a charge to be "in writing under oath or affirmation," 42 U.S.C.A. § 2000e-5(b); *accord* 29 C.F.R. § 1601.9, the ADEA does not require a charge to be signed and verified, *see* 29 U.S.C.A. § 626(d)(1).

The Court acknowledged that "under this permissive standard a wide range of documents might be classified as charges." *Holowecki*, 552 U.S. at 402. "The ADEA . . . sets up a 'remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" *Id.* (citation omitted). "It thus is consistent with the purposes of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft." *Id.* at 403.

5

The intake form and accompanying affidavit submitted by Mr. Hampton satisfied the necessary requirements for a valid ADEA charge. The form and affidavit were written and named the UTA as the employer charged with age discrimination. The affidavit further alleged that the UTA wrongfully laid Mr. Hampton off because of his age and that managers at the UTA wanted to replace him with a younger worker. Finally, the intake form contained a section entitled "What relief are you seeking?" In this section, Mr. Hampton listed "Back pay for pay and benefits for $38,000.00[,] Front Pay for pay and benefits for $310,000.00[,] Reinstate transit passes[, and] Reinstate HRA account." This section can reasonably be construed as a request for the agency to "settle a dispute between the employer and the employee" regarding compensation for the UTA's alleged wrongful termination. *Id.* at 402; *see also Carson v. Cudd Pressure Control, Inc.,* 299 F. App'x 845, 848 (10th Cir. 2008) (unpublished) (holding that intake forms that "stated 'expectations' of 'back pay, front pay, [and] reinstatement of stock incentives,' demonstrate an intent to seek EEOC assistance in enforcing his perceived rights" and that the forms constituted a charge).

The UTA, nonetheless, argues that the intake form should not be deemed a charge because the form stated that it was not a charge. The UTA also points to the fact that Mr. Hampton acknowledged that "[i]n submitting this form you also understand that this does not constitute a Charge of Discrimination." But the UALD cannot countermand Supreme Court authority by printing at least partially incorrect advisories on its intake forms.[3] The UALD may not unilaterally heighten the bar for a valid ADEA charge. Moreover, whether Mr. Hampton

---

[3] The defective notice on the UALD intake form can be traced to the fact that one form is used for both age discrimination claims under the ADEA and discrimination claims under Title VII. The advisories found on the form may be entirely appropriate for a Title VII discrimination claim, which requires a verified charge. The advisories are not accurate when applied to an ADEA claim, which does not require a verified charge.

subjectively intended the intake form to constitute a charge is immaterial. *See Holowecki*, 552 U.S. at 402 (holding that the filer's state of mind is not determinative of whether a filing constitutes a charge). The sole question is whether a submission satisfies the *Holowecki* requirements.

The intake form Mr. Hampton submitted on March 11, 2016 was a charge under the ADEA because it met the *Holowecki* requirements. The charge was filed within the 300-day deadline, and the UTA's argument that the court lacks jurisdiction due to an untimely filing is without merit.[4]

### C. The Timeliness of Mr. Hampton's Complaint

The UTA argued in its reply brief that the ADEA claim should be dismissed for lack of jurisdiction because Mr. Hampton does not allege in his complaint that he filed this action within 90 days after the proceedings before the EEOC were terminated. *See* 29 U.S.C. § 626(e) ("If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 630(a) of this title against the respondent named in the charge within 90 days after the date of the

---

[4] Because the court determines that Mr. Hampton filed a timely charge, it need not address the question of whether the submission of an untimely charge is a jurisdictional defect that is properly addressed under Rule 12(b)(1). *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination [under Title VII] with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *McCall v. Bd. of Comm'rs of Cty. of Shawnee, KS*, 291 F. Supp. 2d 1216, 1221 (D. Kan. 2003) ("Although the Supreme Court has held that failure to file a timely charge with the EEOC does not deprive the courts of jurisdiction, the Tenth Circuit has concluded that the actual filing of a charge, whether timely or not, is a jurisdictional prerequisite." (citation omitted)); *Gad v. Kansas State Univ.*, 787 F.3d 1032, 1038–41 (10th Cir. 2015) (holding that the verification requirement for a Title VII discrimination charge is not jurisdictional, and calling into question earlier Tenth Circuit authority holding that various administrative exhaustion requirements were jurisdictional in light of more recent Supreme Court authority).

receipt of such notice."). The court generally does not address arguments raised for the first time in a reply brief. But the court has an independent duty to determine whether it has jurisdiction to hear a case. *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270–71 (10th Cir. 1998) ("[A] federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings." (citation omitted)) The court, therefore, ORDERS Mr. Hampton to file either an amended complaint or a response addressing the UTA's argument within 30 days of the date of this order.

**II.     THE AGE DISCRIMINATION CLAIM UNDER 49 U.S.C. § 5332(b) AND 42 U.S.C. § 2000d**

Mr. Hampton asserted a second cause of action for age discrimination under 49 U.S.C. § 5332(b) and 42 U.S.C. § 2000d. The UTA moved to dismiss this claim, arguing that neither statute supports a cause of action for age discrimination.

*A.  49 U.S.C. § 5332(b)*

Title 49, Chapter 53 of the U. S. Code promotes public transportation in the United States. 49 U.S.C. § 5301. Section 5332 of this chapter provides: "A person may not be excluded from participating in, denied a benefit of, or discriminated against under, a project, program, or activity receiving financial assistance under this chapter because of race, color, religion, national origin, sex, disability, or age." 49 U.S.C. § 5332(b). The statute further states that the "Secretary [of Transportation] shall take affirmative action to ensure compliance with" this nondiscrimination provision. *Id.* § 5332(c)(1). If person does not comply with the nondiscrimination provision after the Secretary of Transportation gives notice of noncompliance, the "Attorney General may bring a civil action for appropriate relief." *Id.* § 5332(e).

Thus, 49 U.S.C. § 5332 explicitly limits any civil enforcement of the nondiscrimination provision to an action brought by the Attorney General. There is no private right of action. *Cf.*

8

*A.B.C. Bus Lines, Inc. v. Urban Mass Transp. Admin.*, 831 F.2d 360, 361 (1st Cir. 1987) (". . . Congress did not intend to create a private cause of action when it enacted the Urban Mass Transportation Act."); *City of Evanston v. Reg'l Transp. Auth.*, 825 F.2d 1121, 1123 (7th Cir. 1987) ("The UMT Act does not create a private right of action, and none can be implied."); *Razorback Cab of Ft. Smith, Inc. v. Flowers*, 122 F.3d 657, 659 (8th Cir. 1997) (per curiam) ([W]e hold that the language of the UMT Act[, which includes 49 U.S.C. § 5332(b),] does not indicate any congressional intent to confer on this plaintiff a private right of action.").

### B. 42 U.S.C. § 2000d

Title VI of the Civil Rights Act, codified in 42 U.S.C. § 2000d, provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Title VI does not prohibit discrimination based upon age. Therefore, this statute cannot be the basis for an age discrimination claim.

### C. Conclusion

Neither 49 U.S.C. § 5332(b) nor 42 U.S.C. § 2000d can support a private cause of action for age discrimination. Because of this fundamental legal impediment, any attempt to amend this cause of action would be futile. Therefore, Mr. Hampton's second cause of action for age discrimination is DISMISSED WITH PREJUDICE under Rule 12(b)(6).

## III. THE BREACH OF CONTRACT CLAIM

Mr. Hampton alleged that when he was told that he would be laid off, he was also promised a lifetime UTA ride pass and the ability to convert his unused sick time to an HRA account. [Docket 2, ¶¶ 21–22]. When he decided not to accept a severance agreement, the UTA declined to honor these two promises. [Docket 2, ¶¶ 23–25]. Based upon these facts, Mr. Hampton alleged a cause of action for breach of contract:

> As a part of Plaintiff's employment relationship with Defendant, Defendant agreed to compensate Plaintiff in the form of a UTA ride pass. Plaintiff was also entitled to his unused sick time, or a conversion of his unused sick time to an HRA.
>
> Defendant's promise to compensate Plaintiff in the form of a UTA ride pass, and to convert his unused sick time to an HRA, was part of Plaintiff's employment contract with Defendant.
>
> Defendant materially breached the employment contract with Plaintiff.

[Docket 2, ¶¶ 44–46].

The UTA argues that this cause of action fails to state a claim upon which relief can be granted. The court agrees. "The law does not enforce all promises. For a promise to be legally enforceable, it must be supported by consideration." *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1036 (Utah 1985). "Consideration is an act or promise, bargained for and given in exchange for a promise." *Id.* Mr. Hampton's complaint does not identify any consideration for the promised benefits. In some situations, an employee's continued services within the employment relationship can serve as consideration for a contract with an employer. *See Johnson v. Morton Thiokol, Inc.,* 818 P.2d 997, 1002 (Utah 1991). But in this case, the UTA's promise to provide benefits was made only after it informed Mr. Hampton that he would be laid off. Thus, neither his act of continued employment nor a promise to continue to provide his services could constitute consideration for the promised benefits. Moreover, the complaint specifically alleges that the promised benefits were not part of the severance agreement. [Docket 2, ¶ 25]. So a promise on Mr. Hampton's part to execute the severance agreement cannot be deemed consideration for the promised benefits. Absent any consideration to support a contract with the UTA for the promised benefits, the complaint fails to state a cause of action for breach of contract.

The court therefore GRANTS the UTA's motion to dismiss the breach of contract claim. Because it may be possible to plead additional facts that would cure this defect, this claim is DISMISSED WITHOUT PREJUDICE. If Mr. Hampton wishes to amend the breach of contract cause of action he may file an amended complaint within 30 days of the date of this order.

## CONCLUSION

The court ORDERS as follows on the UTA's motion to dismiss [Docket 5]:

(1) The UTA's motion to dismiss the ADEA claim is DENIED. The court ORDERS Mr. Hampton to file either an amended complaint or a response to the UTA's argument regarding the timeliness of the complaint within 30 days of the date of this order.

(2) The UTA's motion to dismiss the second age discrimination claim under 49 U.S.C. § 5332(b) and 42 U.S.C. § 2000d is GRANTED. Dismissal is WITH PREJUDICE.

(3) The UTA's motion to dismiss the breach of contract claim is GRANTED. Dismissal is WITHOUT PREJUDICE. The court grants Mr. Hampton leave to file an amended complaint within 30 days of the date of this order if he wishes to do so.

DATED September 7, 2017.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge